The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AYNALEM MOBA et al., <br><br> Plaintiffs, <br><br> v. <br><br> TOTAL TRANSPORTATION SERVICES, INC. et al., <br><br> Defendants. | No. 2:13-cv-00138 MJP <br><br> DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> NOTE ON MOTION CALENDAR: March 28, 2014 |

Defendants Seattle Freight Service, Inc. ("Seattle Freight"), Rick Livingston, and Vance Rogers, by and through their attorneys Vandeberg Johnson & Gandara, LLP and Lucy R. Clifthorne, move for an order granting summary judgment dismissing the plaintiffs' claims and awarding Seattle Freight its reasonable attorney fees and costs.

## I. INTRODUCTION

The defendant Seattle Freight has been offering transportation services to railroads, shippers, forwarders and steamship lines serving the Ports of Seattle and Tacoma since 1979. Customers contact Seattle Freight with their transportation needs, and Seattle Freight meets those needs by coordinating and scheduling independent truck owners to complete the requested pickups and deliveries by hauling the 20-foot and 40-foot containers that are standard in the industry. The other identified defendants are a former General Manager of Seattle Freight and its Operations Manager.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

The plaintiffs are individuals who had contracts with Seattle Freight that allowed them to transport containers for Seattle Freight customers. Plaintiffs claim they should be deemed employees of Seattle Freight, and as such, allowed to bring claims under the Fair Labor Standards Act and Washington wage laws. Plaintiffs also assert claims under the Washington Law Against Discrimination, and for negligence and outrage.[1]

Plaintiffs' wage claims should be dismissed because the laws at issue do not apply to independent contractors such as the plaintiffs. Plaintiffs' discrimination claims should be dismissed because plaintiffs were not subject to any adverse action on the basis of race or national origin. Plaintiffs' outrage and negligence claims should be dismissed because they have not asserted any independent facts to support these claims.

## II. STATEMENT OF FACTS

Seattle Freight specializes in moving freight for the import and export industry, both "short hauls" between rail and steamship, as well as door-to-door pick-up and delivery between points in Washington, Oregon, Idaho and Montana.[2] As is common in the highly-regulated trucking industry, Seattle Freight contracts with independent owner operators ("IOOs" or "contractors"), who lease their trucks to Seattle Freight when they are hauling containers on its behalf. This system developed over many decades to accomplish the national goal that only trucking companies authorized by the Federal Motor Carrier Safety Administration ("FMCSA") be responsible for transportation of freight, while allowing flexibility for independent truck owners and variations in business models.

To comply with these requirements, Seattle Freight enters into a Transportation Lease Agreement ("TLA") with IOOs that own one or more trucks, and hire one or more licensed

---

[1] Plaintiffs voluntarily dismissed claims under the National Labor Relations Board and Title VII.
[2] Unless otherwise indicated, facts are supported by the Declarations of Rick Livingston, Kevin Coon, and Vance Rogers, filed herewith.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

commercial drivers. See Exhibit 1, Declaration of Rick Livingston. Seattle Freight has the responsibility of assuring that each IOO and each any individual driving for an IOO complies with the FMCSA requirements, including the requirement of adequate liability insurance.

Each TLA has a one-year term. During that term, an IOO may accept or reject any work assignment offered by Seattle Freight. If an IOO accepts a dispatch job, the IOO is paid a percentage of what Seattle Freight is paid by its customer; currently the IOO receives 80%, and Seattle Freight receives 20%. There is no obligation to accept a particular number of dispatches. It is helpful if contractors notify Seattle Freight when they will be unavailable for a period of time, but it is not required. Nor does Seattle Freight request or keep track of the reason for a contractor's unavailability. When a contractor is not available, Seattle Freight has no way of knowing whether the contractor is on vacation, or working for another carrier, or ill, or simply not interested in working that day.

This lawsuit involves solely the "short haul" portion of Seattle Freight's business; that is, between BNSF rail terminals and the Port of Seattle. There are nine carriers that have a contract with BNSF to pick up and deliver freight to its terminals. Since the 1990s, Seattle Freight was singularly successful in attracting large numbers of IOOS, and growing its share of the Seattle "short haul" business. Seattle Freight's success in attracting and keeping owner operators interested in driving under Seattle Freight's motor carrier authority is due in part to its broad-minded attitude toward its drivers, who were recruited from all races and nationalities. Safety has always been the sole criteria for evaluating drivers. As a result, Seattle Freight has never been the target of any discrimination claim.

In this lawsuit, plaintiffs claim that Seattle Freight retaliated against them after they engaged in a sudden, coordinated refusal to work for two weeks. To evaluate this claim, one needs to understand the process by which IOOs are offered dispatch jobs. Seattle Freight

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

dispatchers post a daily list of dispatch assignments for the following day. Historically reliable drivers are typically offered the first dispatches, after which IOOs are offered jobs on a rotating basis, in alphabetical order. When a job is not accepted, the dispatcher contacts the next IOO on the list.

On or around January 31, 2012, and for about two weeks thereafter, drivers that had been providing freight service between BNSF and the Port of Seattle failed to arrive at their assignments, without advance notice to Seattle Freight. Complaint, ¶2.12, 2.13. The coordinated work refusal affected several trucking companies, but because Seattle Freight had earned a larger portion of the BNSF work, the action hit hardest on Seattle Freight. Seattle Freight moved quickly to try to preserve its contract with the BNSF, relying on the IOOs who continued to work during the action, as well as asking IOOs who hauled freight regionally to take short-haul dispatches.

Although the TLAs are terminable at will by either party, Seattle Freight did not cancel any TLA after the plaintiffs ended their work refusal, and continued to give the plaintiffs dispatches when they returned. Plaintiffs are correct that there was less work than before, but this was not the result of retaliation. See Complaint, ¶2.18.

A few months after the 2012 action, the "Grand Alliance" shipping line moved its cargo from the Port of Seattle to the Port of Tacoma, greatly reducing the overall volume of short-haul work in Seattle. This move affected all of the Seattle trucking companies that provided short-haul services to BNSF. Even before this occurred, BNSF decided to give Seattle Freight a much small proportion of the short-haul work between its terminal and the Port of Seattle. This, again, sharply reduced the amount of available short-haul work to IOOs working for BNSF. Yet, despite the sharp reduction in short-haul work, many of the plaintiffs earned comparable or even greater revenue in 2012 than they had in the prior year.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

Moreover, all of the plaintiffs who wished to had their one-year contracts renewed when they expired in October 2012. Some of the plaintiffs had terminated their TLAs for their own reasons. One plaintiff, Fentea, terminated his contract the month after the work stoppage. Another plaintiff, Moba did not terminate his lease, merely called Kevin Coon and asked to be taken off the insurance because he was doing some other things. Another Plaintiff Elmi terminated his lease in June. Another plaintiff, Ghebreyesus, started a trucking company, but continued to lease a truck to Seattle Freight through a partner. Some plaintiffs, such as Berhe, left for unknown reasons.

As the short-haul work evaporated, Seattle Freight offered other dispatch jobs to its IOOs, as it sought additional regional jobs to fill the gap. While some IOOs accepted these jobs, the plaintiffs typically did not. As a result, when the TLAs expired in October 2013, Seattle Freight had far more short-haul IOOs than it needed, and many of the remaining plaintiffs' TLAs were not renewed in November 2013. At this time, only two of the plaintiffs continue to contract with Seattle Freight.

Plaintiffs filed suit on January 24, 2013. Plaintiffs dismissed Total Transportation Services, Inc., without prejudice, Doc. 12, and dismissed their claims for violation of the National Labor Relations Act and Title VII with prejudice. Doc. 21. Defendants now move to dismiss the remaining claims against Seattle Freight and the two individual defendants for (1) violation of the Fair Labor Standards Act by failing to properly pay employees; (2) violation of RCW 49.60 by discriminating against employees on the basis of race and/or national origin; (3) violation of RCW 49.46 and 49.48, Washington's wage statutes; (4) outrage and (5) negligence.
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\5000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

Case 2:13-cv-00138-MJP   Document 30   Filed 02/28/14   Page 6 of 19

## III. LEGAL AUTHORITY

Dismissal on summary judgment is appropriate because plaintiffs are independent business owners to whom the federal, state, and wage laws apply; they were not subjected to either a hostile work environment or an adverse employment action on the basis of racial or national origin; and they allege no independent facts to support an outrage or negligence claim.

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, affidavits, depositions, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). To defeat summary judgment, the nonmoving party must come forward with specific, admissible evidence to rebut sufficiently the moving party's contentions and support all necessary elements of the party's claims. *White v. State*, 131 Wn.2d 1, 929 P.2d 396 (1997).

### B. INDEPENDENT CONTRACTORS NOT SUBJECT TO THE FAIR LABOR STANDARDS ACT OR WASHINGTON'S WAGE LAWS

Plaintiffs wish to be deemed employees under the Fair Labor Standards Act ("FLSA") and thus be compensated for "back wages with interest," and various business costs. Complaint ¶ 4.15–4.20, 4.29–4.35. However, the FLSA applies only to "employees," defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). *See also* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work.")

Courts look to a variety of factors to determine whether an individual is an "employee" under the FLSA. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729-30, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947) Courts have adopted the term "'economic reality'" to describe the relevant inquiry, and list nonexclusive factors to be considered. *Goldberg v. Whitaker House Coop., Inc.*,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 6
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) (quoting *United States v. Silk*, 331 U.S. 704, 713, 67 S. Ct. 1463, 91 L. Ed. 1757 (1947)). The Ninth Circuit looks at the following:

1) the degree of the alleged employer's right to control the manner in which the work is to be performed;

2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

4) whether the service rendered requires a special skill; and

5) the degree of permanence of the working relationship.

*Donovan v. Sureway Cleaners,* 656 F.2d 1368, 1370 (9th Cir. 1981). In the Ninth Circuit no one factor is not dispositive; rather, the court looks at the totality of circumstances to ascertain the economic reality of the employment relationship. *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

Washington courts have adopted the same test to determine whether a person is an employee with respect to Washington's wage laws. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 871, 281 P.3d 289 (2012). Again, no one factor is determinative; rather, the central inquiry is whether the worker is economically dependent on the alleged employer or is actually in business for himself. *Id.* (citations omitted).

Courts applying the economic realities test to IOOs in the trucking industry have consistently found an independent contractor relationship with the authorized carrier. *See, e.g., Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300 (E.D.N.Y. 2009). As discussed below, the facts in this case clearly demonstrate the independent contractor nature of the plaintiffs' businesses in relation to Seattle Freight.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

### 1. **Plaintiffs retain control over the manner in which their work is performed.**

The role of Seattle Freight is to make sure each customer's freight transportation needs are fulfilled by a qualified commercial truck owner. Each IOO retains full control over whether to accept a particular dispatch job, and over the manner of performance once accepted. See TLA, Article 3, Exhibit 1, Livingston Declaration.

For example, plaintiffs retain the authority to: (1) decide how many tractors to acquire and from whom; (2) decide how many and which days they will work; (3) determine how many and which dispatch jobs to accept; (4) choose whether to hire other licensed drivers to drive their trucks; (5) select delivery routes; (6) determine where a truck will be repaired; (7) choose the insurance company that will provide coverage, and (8) decide whether to purchase the minimum liability coverage or additional coverage. Contractors select and hire their own employees to assist with the delivery and pickup of cargo, and are solely responsible for the direction and control of these individuals, including selecting their work days and terms of employment and pay. See. e.g., *N. Am. Van Lines, Inc. v. NLRB*, 869 F.2d 596, (D.C.Cir.1989) (holding that truck drivers were independent contractors, in part because "[t]he drivers retained nearly absolute control over their performance in the cab, their dress, the course they follow in hauling the load, when they work (while hauling loads and in between hauling loads), and where and when they stop, dine, or rest in the midst of driving.") For example, during the time plaintiff Moba contracted with Seattle Freight, he hired two or three different employees and determined how they would be paid. See, e.g., Transcript, p. 14-16, 19-20, Declaration of Lucy Clifthorne.

Plaintiffs' complaint relies upon fundamentally erroneous allegations: (1) "Plaintiffs are forced to purchase their trucks from Seattle Freight and lease them back to the company"; (2) plaintiffs are required to "be in the office for designated fulltime hours five days a week when not out on a job, or be fired," Complaint, ¶ 4.17; (3) "drivers have no [r]ight to use [their

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

trucks] for any other purpose or retain [them] if fired." Complaint, ¶ 2.3. None of this is true. Plaintiffs bought their own trucks from whomever they wish; Seattle Freight does not sell trucks. To transport freight, IOOs must have an appropriate truck, insured and maintained, but the truck is theirs to do with as they please.

Nor does an IOO need to come into the Seattle Freight office. "Lessor is not obligated to accept shipments offered by Lessee, or be every business day." Exhibit 1, ¶ 3.4, Livingston Dec. When IOOs wish to work but do not have a pre-assigned dispatch on a particular day, they may come to the office in order to be available. Or they may choose to do something else. "Lessor will not be required to make a minimum number of shipments, and may perform services for other motor carriers. Id., ¶ 3.6. As noted above, while some IOOs are motivated to accept all available jobs, others prefer only to drive between the Port of Seattle and BNSF. Regardless, it is entirely the contractor's choice. Accordingly, this factor supports plaintiffs' independent contractor status.

2. **Plaintiffs have a real opportunity for individual profit and loss.**

The second factor is whether plaintiffs have an opportunity to make more or less profit, according to their own investment and management skills. For example, in a case involving a laundry and dry cleaning retail outlets, a company tried to characterize its workers as independent contractors despite the fact that they made no capital investment in the business, and therefore bore no risk of significant loss. *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1369-71 (9th Cir. 1981).

By contrast, these plaintiffs clearly have the ability to control their individual profit and loss. All of the plaintiffs decide how much to invest in their trucks. Several choose to buy more than one truck. Several hire other drivers to work for them. All decide when and how to maintain and repair their trucks. Most importantly, all of the plaintiffs decide how often to be available

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

and what dispatches to accept. Thus, the owners control their own income, depending on investment, management skill, and working hours. This factor also supports the plaintiffs' status as independent contractors.

3. **<u>Plaintiffs invest in their own equipment and hire their own employees.</u>**

As noted above, plaintiffs purchase their own trucks, either individually or in partnership with others. This is a significant investment, around $7,000 to $25,000 per truck. Some IOOs purchase more than one truck and hire drivers, to maximize the use of each truck.

Seattle Freight provides neither the trucks nor the chassis that is used by the IOOs. Plaintiffs use their own trucks, and a chassis provided by BNSF. On occasion, IOOs have borrowed a "super chassis" belonging to Seattle Freight, but since a super chassis is not needed for the short-haul service provided by these plaintiffs, a loan to a plaintiff would have been the exception to the rule. The only equipment that plaintiffs lease from Seattle Freight is an FM radio, for which Seattle Freight charges $7.00 per week.

The fact that plaintiffs invest in their own equipment and hire their own employees supports their status as independent contractors.

4. **<u>Plaintiffs' business requires a special skill.</u>**

Possession of a commercial driver's license has been determined to be a special skill by several federal appellate courts, including the Ninth Circuit. *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1387 (3rd Cir. 1985); *United States v. Ordonez*, 334 F.App'x 619, 624 (5th Cir. 2009); *United States v. Lewis*, 41 F.3d 1209, 1214 (7th Cir. 1994) ("Truck driving requires technical knowledge or ability that the average citizen does not possess"); *United States v. Mendoza*, 78 F.3d 460, 465 (9th Cir. 1996).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

Plaintiffs obtained special training, typically through a course at a truck driving school. They are required to comply with numerous state and federal requirements, and to pass regular inspections. This factor also points to an independent contractor status.

5.  **Plaintiffs do not work permanently or exclusively for Seattle Freight.**

All Seattle Freight TLAs have a one-year term. Renewal is an annual decision made by both parties. The TLA does not require an IOO to work a minimum number of days, or even to work at all. As a courtesy, Seattle Freight dispatchers appreciate being informed when a contractor will be unavailable, but it is not required. The fact that plaintiffs' unannounced refusal to accept dispatches in February 2012 was not deemed a breach of their contract demonstrates this fact. Usually, IOOs do notify the company when they will be gone for a few weeks or months, if only to save on insurance costs. Although the plaintiffs' trucks remain insured until they cancel their policy, as a courtesy to its IOOs, Seattle Freight has had a policy of absorbing their insurance costs during such absences.

It is immaterial to Seattle Freight whether a contractor's absence is due to a vacation, or other work; it is entirely up to the IOO when to work. Again, this factor points to an independent contractor status.

6.  **The economic reality is that plaintiffs are in business for themselves.**

Plaintiffs own and operate their own businesses. They use their skill and equipment to earn profit by offering their services to motor carriers such as Seattle Freight. Just as a grocery store would have no food to sell without deliveries, or a temporary employment agency would have nothing to offer without a pool of laborers, Seattle Freight relies on contractors to fulfill its customer's needs. The mere fact that plaintiffs provide an essential service does not negate their status as independent contractors. The economic reality is that plaintiffs are not economically dependent on Seattle Freight, but can use their trucks to haul freight for themselves, for

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

individual customers, or for other companies. They can also use their trucks to start their own trucking company, like plaintiffs Moba and Elmi.

Summary judgment dismissal is appropriate when, considering the factors as a whole, the balance tips in favor of independent contractor status. *Barnhart v. New York Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998). Accordingly, plaintiffs' claims under FLSA and the Washington wage statutes should be dismissed as to the three remaining defendants.

### C. PLAINTIFFS WERE NOT DISCRIMINATED AGAINST ON THE BASIS OF THEIR RACE OR NATIONAL ORIGIN

Plaintiffs assert a claim against all defendants under RCW 49.60, based on an alleged hostile work environment and alleged discriminatory treatment on the basis of race or national origin. Complaint ¶ 4.25. Even if this statute applies to independent contractors such as the plaintiffs, the claims should be dismissed because the alleged slurs did not single out plaintiffs on the basis of race or national original, nor were they sufficiently severe or pervasive so as to affect the terms and conditions of employment, nor were plaintiffs were treated differently from similarly situated drivers on the basis of a protected class.

#### 1. Even if Plaintiffs Were Employees, Defendants' Alleged Conduct Was Not Sufficiently Severe to Alter the Terms and Conditions of Employment.

Defendants have been unable to locate any court decision in which RCW 49.60 has been held to apply to an independent contractor's claim of a hostile work environment. While employers have been held liable for failing to protect employees from harassment by third parties, this is different from holding a business liable for protecting non-employees.

Nevertheless, assuming for purposes of this motion that independent contractors may assert a hostile work environment claim under RCW 49.60, plaintiffs must show (1) they were subjected to verbal or physical conduct based on their race or national origin; (2) the conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

[their] employment and create an abusive working environment." *Ramirez v. Olympic Health Mgmt. Systems, Inc.*, 610 F.Supp.2d 1266, 1285 (E.D. Wash. 2009). To satisfy the third element, plaintiffs must show that their work environment was both subjectively and objectively hostile. *Id.* (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

The work environment at Seattle Freight was hardly hostile; IOOs of all races and national origin sought to contract with Seattle Freight. Even if plaintiffs' allegations were true, the U.S. Supreme Court has cautioned that workplace discrimination law is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998). Offhand comments and isolated incidents, unless extremely serious, do "not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (internal citation omitted); *see also Jordan v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir.1988) (finding no hostile work environment where "off-color" jokes were told in the workplace).

Whether harassment is sufficiently pervasive to create an abusive working environment is determined by the totality of the circumstances. *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729 (2004) (citation omitted). The court considers the "'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Sangster v. Albertson's, Inc.*, 99 Wn. App. 156, 163, 991 P.2d 674 (2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993)). Here, plaintiffs complain of a reference to refugees; a general admonition regarding radio use; comments by a former employee; and offensive language. This does not give rise to a claim under RCW 49.60.[3]

---

[3] Defendants asked each plaintiff to identify all factual bases for his discrimination claim. Only one plaintiff responded. This motion addresses conduct identified in the complaint, Moba's written discovery answers, and depositions of five plaintiffs.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

### a. The safety director's reference to refugees was not abusive.

Seattle Freight IOOs attend regular meetings with the safety director, Kevin Coon, generally held in the yard outside Seattle Freight's office. The safety director often sought to convey that Seattle Freight held itself to a higher standard than others. On one occasion, Coon repeated a BNSF complaint that Coon did not believe applied to Seattle Freight. The BNSF employee had complained that rather than lining up in an orderly manner to pick up containers, drivers would follow lift machines around the terminal creating an unsafe condition, like refugees swarming a relief helicopter. Coon was complimenting Seattle Freight drivers for not behaving in such an unsafe manner. Even if plaintiffs view this as a racially offensive remark, this isolated incident was not so sufficient to alter the conditions of employment.

### b. Plaintiffs overheard a general admonition they found offensive.

Seattle Freight offers an FM radio for lease to all IOOs with a current TLA with Seattle Freight. The frequency is used not only by Seattle Freight and the IOOs, but also by employees of the Port of Seattle and BNSF. On one occasion, when weekend work was offered over the radio, many IOOs jumped on the radio at the same time, and the operations manager admonished drivers not to act like "animals." Even if plaintiffs found the comment offensive, although it was directed at all IOOs exhibiting the offending behavior, it would not create an create an objectively abusive work environment under the standards set down by the Supreme Court in *Faragher* and elsewhere. Such language is not remarkable in its context.

Plaintiffs also allege that they overheard racial epithets at Seattle Freight. Again, even if this were true, Washington requires more than inappropriate name-calling to establish a hostile work environment. For example, in *Manatt v. Bank of Am., NA*, 339 F.3d 792 (9th Cir. 2003), the court considered the claim of an employee of Chinese descent. The plaintiff overheard jokes using the phrase "China man"; his mispronunciation was ridiculed; and coworkers had "pulled

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians." *Id.* at 798-99. The court found that such conduct, while offensive and inappropriate, was not sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment. *Id.* (citing *Vasquez v. County of Los Angeles,* 307 F.3d 884, 893 (9th Cir.2002) (no hostile work environment where employee was told he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and he was yelled at in front of others); *Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1111 (9th Cir.2000) (no hostile work environment where supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" and called plaintiff "Medea").

Consistent with *Manatt,* the Washington Supreme Court requires more than an offensive utterance or incivility. "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." *Glasgow v. Georgia-Pac. Corp.,* 103 Wn.2d 401, 406, 693 P.2d 708, 712 (1985). A court should consider whether the alleged harassment is physically threatening or humiliating and unreasonably interferes with an employee's work or whether it is merely an offensive utterance. *Sangster,* 99 Wn. App. at 163. Where the alleged conduct is merely offensive, summary judgment in favor of defendants is appropriate. *Manatt,* 339 F.3d at 798.

  c. <u>**Plaintiffs rely on alleged comments of a long-gone employee.**</u>

Much of the comments cited by plaintiffs are attributed to Gary Barber, a former Seattle Freight employee nicknamed "Red," Barber was a dispatcher whose last day at Seattle Freight was September 30, 2008. While courts have allowed plaintiffs to rely on conduct beyond the statutory limitations period to help establish a hostile work environment, they may do so only when the conduct is "part of the same actionable hostile work environment practice" as actions falling within the statutory period. *Antonius v. King County,* 153 Wn.2d 256, 271, 103 P.3d 729

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

(2004) (quoting *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 120, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "The acts must have some relationship to each other to constitute part of the same hostile work environment claim." *Id.* Courts must consider whether the acts "involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Morgan*, 536 U.S. at 120. If there is no such relation, or an intervening action by the employer, "'then the employee cannot recover for the previous acts' as part of one hostile work environment claim." *Antonius*, 153 Wn.2d at 271 (quoting *Morgan*, 536 U.S. at 118).

Here, Barber's employment was terminated more than four years before plaintiffs brought this action, and possibly earlier, and the alleged conduct has no relation to any current complaint.

### d. One plaintiff alleged a racist comment by a current manager.

At deposition, one plaintiff, Isaac Sebhatu, alleged that at some point in time, Rick Livingston called African Americans lazy. While Livingston denies both the comment and the sentiment, the salient point for purposes of this motion is that the allegation is not of conduct sufficiently severe or pervasive to establish a hostile work environment in violation of RCW 49.60. *Faragher*, 524 U.S. at 788.

### 2. Plaintiffs Were Not Treated Differently From Similarly Situated Individuals of a Different Race or National Origin

Plaintiffs also allege they were subject to "discriminatory treatment" on the basis of race or national origin, Complaint ¶ 4.25. However, other than being subjected to alleged racial slurs, the complaint does not identify any way plaintiffs were treated different from other contractors on the basis of race or national origin. Complaint ¶¶ 2.29–2.31, 4.21–4.28.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 96401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

To defeat a motion to dismiss the discriminatory treatment claim, plaintiffs must show:

> (1) they belonged to a protected class; (2) they were qualified for their jobs; (3) they were subjected to an adverse employment action; and (4) similarly situated employees not in their protected class received more favorable treatment.

*Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (citation omitted). They must "establish specific and material facts to support each element of [their] prima facie case," rather than mere opinion or conclusory statements. *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996) (citations omitted). In the absence of direct evidence of discrimination, Washington courts follow the burden allocation scheme developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* at 113.

Under *McDonnell Douglas*, plaintiffs must first establish each element of their claim. If they are able to do so, then the burden shifts to the employer to show a legitimate, non-discriminatory reason for its action. *See, e.g., Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 181, 23 P.3d 440 (2001). If the employer does so, then the burden shifts back to plaintiffs to show that the reason given by the employer was a pretext for discrimination. *Id.* at 181-82.

Plaintiffs are members of a protected class. However, they were not subjected to an adverse employment action, nor were similarly-situated individuals of a different race or ethnic origin treated differently. Plaintiffs attempt to avoid the lack of differential treatment by conflating their claim of racial slurs with their claim that they suffered retaliation for attempting to organize. At the time, plaintiffs asserted that they were organizing to obtain better pay and working conditions at the Port of Seattle, not to protest discrimination by Seattle Freight. And plaintiffs have confirmed their belief that the sole reason they belief they received fewer dispatch offers from Seattle Freight after their coordinated work refusal was in retaliation for the two-week work stoppage.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

Regardless of the purpose for plaintiffs' work refusal in early 2012, none of plaintiffs' TLAs were terminated thereafter, and in fact all of the plaintiffs who sought renewal later than year had their TLAs renewed by Seattle Freight. There is simply no evidence of an adverse employment action based on the plaintiffs' race or national origin.

Certainly, there was less short-haul work available in late 2012 and early 2013, as a result of shipping lines moving work to the Port of Tacoma, and the BNSF electing to give a smaller percentage of its transportation work to Seattle Freight. Not only were these factors beyond defendants' control, it was also plaintiffs' decision to decline to accept other work from Seattle Freight. And there is simply no evidence that the short-haul dispatch rotation had anything to do with race or national origin. Plaintiffs claim for damages based on racial discrimination should be dismissed as to each of the remaining defendants.

### D.   PLAINTIFFS TORT CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE DUPLICATIVE OF PLAINTIFFS' DISCRIMINATION CLAIMS

Plaintiffs allege that:

> In creating and maintaining the hostile work environment and otherwise verbally slurring, assaulting, and harassing Plaintiffs and the other drivers, Defendants acted deliberately to cause them severe emotional pain, and acted in an outrageous manner that would shock the conscience of a reasonable person.

Complaint, ¶ 4.37. Plaintiffs further allege that "[i]n committing the forementioned acts and/or omissions, Defendants, and each of them, negligently breached said duty to use due care" in dealing with the plaintiffs. Complaint, ¶ 4.41.

Under Washington law, an employee may advance discrimination and negligence claims *only* if the factual basis for the negligence claim is distinct from the factual basis for a discrimination claim. *Haubry v. Snow*, 106 Wn. App. 666, 678, 31 P.2d 1186 (2001); *Francom v. Costco Wholesale Corp*, 98 Wn. App. 845, 866, 991 P.2d 1182 (2000) ("[T]he Francoms rely on the same facts to support both their discrimination claim and their negligent supervision or

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 18
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX

retention claim. Just as with their claim for negligent infliction of emotional distress, the claim is duplicative, and the superior court properly dismissed it.")

Plaintiffs' negligence and discrimination claims arise from the same allegations. Because plaintiffs have not asserted an independent factual basis, their negligence claims should be dismissed as a matter of law. The same is true with respect to an intentional tort claim of outrage:

> Like the negligence claim, Haubry's claim for the tort of outrage is subsumed in her argument for sexual harassment and she has failed to provide any medical evidence in support of her claim. The trial court did not err in dismissing this claim on reconsideration.

*Haubry*, 106 Wn. App. at 681. Plaintiffs allege no separate facts to support their intentional tort claims. Accordingly, these claims should be dismissed as to each of the remaining defendants.

## IV.  CONCLUSION

Plaintiffs' claims under the Fair Labor Standards Act should be dismissed because the plaintiffs were independent contractors when they provided services to Seattle Freight, and FLSA applies solely to employees. Plaintiffs' claims under RCW 49.60 should be dismissed because plaintiffs cannot demonstrate either an abusive work environment or disparate treatment on the basis of race or national origin. Finally, plaintiffs' claims for outrage and negligence should be dismissed because they are based on the identical factual allegations as the plaintiffs' discrimination claim.

Respectfully submitted this 28th day of February, 2014.

VANDEBERG JOHNSON & GANDARA, LLP


By  /s/ Lucy R. Clifthorne
    Lucy R. Clifthorne, WSBA # 27287
    Attorneys for Defendants

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19
Case No. 2:13-cv-00138 MJP

VANDEBERG JOHNSON & GANDARA, LLP
ATTORNEYS AT LAW
1201 PACIFIC AVENUE, SUITE 1900
P.O. BOX 1315
TACOMA, WASHINGTON 98401-1315
(253) 383-3791 (TACOMA)
FACSIMILE (253) 383-6377

F:\15000-15999\15000\15000.62293\PLEADINGS\LRCPAZW.DOCX